UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff-<br>　　　　Appellee,<br><br>　　v.<br><br>JOHN E. GODFREY,<br><br>　　　　Defendant-<br>　　　　Appellant. | No.   2:14-cr-00323 JAM<br><br>**ORDER AFFIRMING IN PART AND REVERSING IN PART DEFENDANT'S CONVICTIONS** |

　　　This matter is before the Court on Defendant John Godfrey's ("Defendant") appeal from his conviction on three counts following a trial before Magistrate Judge Kendall Newman (Doc. #36).  With leave of the Court, The New 49'ers Legal Fund ("Amicus") filed an amicus curiae brief (Doc. #38). Oral argument was held before the Court on June 2, 2015.  For the following reasons, Defendant's conviction is affirmed in part, and reversed in part.

///

///

///

1

I.   FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Defendant's gold mining operation on the Lucky Bob Mining Claim in the Tahoe National Forest.  Doc. #32, Reporter's Transcript, Day 1 ("RT1") at 1-224.  The Lucky Bob claim is a placer claim, which means that gold was found within gravels or sedimentary deposits,rather than in hard rock or quartz.  RT1 at 1-42.  Because the Lucky Bob claim is unpatented, the United States Forest Service retains jurisdiction to manage the non-mineral surface resources on the land.  RT1 at 1-42.  During the relevant time period, Defendant had received permission from the holder of the Lucky Bob claim to mine the claim.  RT1 at 1-224.  As detailed below, Defendant took a number of actions to improve land and trails on the claim.  RT1 at 1-50 – 1-54.  Defendant also installed a non-motorized hand sluice, which was described at trial as follows: "A sluice box is an elongated piece of metal with sides and with little partitions in the lower half of the box that you run water through.  And you take material that's had the rocks and stones removed from it, and put it in that box and let water flow over it and wash out everything but hopefully heavy metals and gold."  RT1 at 1-214 (testimony of defense witness, Larry Latta).  Defendant's convictions arise from his failure to comply with various regulations – promulgated by the United States Secretary of Agriculture and enforced by the United States Forest Service – in mining the Lucky Bob claim.

On August 21, 2014, the Government filed a five-count superseding information, which charged Defendant with five federal Class B misdemeanor counts for allegedly conducting

2

1 | various unauthorized activities on National Forest lands and for
2 | causing damage to surface resources, in violation of 16 U.S.C.
3 | § 551 and 36 C.F.R. § 261 et seq. Doc. #12. In Count One,
4 | Defendant was charged with unauthorized cutting and damaging of
5 | any timber, tree, and forest product, in violation of 36 C.F.R.
6 | § 261.6(a). Id. In Count Two, Defendant was charged with
7 | causing timber, trees, slash, brush, and grass to burn without a
8 | permit, in violation of 36 C.F.R. § 261.5(c). Id. In Count
9 | Three, Defendant was charged with damaging any natural feature or
10 | property of the United States, in violation of 36 C.F.R.
11 | § 261.9(a). Id. In Count Four, Defendant was charged with
12 | unauthorized trail and significant surface disturbance on
13 | National Forest System land, in violation of 36 C.F.R.
14 | § 261.10(a). Id. Finally, in Count Five, Defendant was charged
15 | with placing in or near a creek any substance which may pollute,
16 | in violation of 36 C.F.R. § 261.11(c). Id.
17 |     On September 9-10, 2014, a two-day bench trial was held
18 | before Magistrate Judge Newman. Doc. #18; Doc. #21. Acting as
19 | the finder of fact, Magistrate Judge Newman found Defendant not
20 | guilty of Counts One and Two, because Defendant's actions were
21 | mining-related. Doc. #33, Reporter's Transcript, Day 2 ("RT2")
22 | at 2-46. However, the Magistrate Judge found Defendant guilty of
23 | Counts Three, Four, and Five, noting it was "not possible to look
24 | at the photographs in this case and find that there was not
25 | significant resource disturbance in this case, and that does
26 | include the cutting of trees; the removing of bushes and brush;
27 | the burning; the breaking up of boulders, and using chains and
28 | using a drill to do so; the use of chemicals, whether non-toxic

or otherwise; the use of a hose, even if only for a few times, but then to use a hydraulic method; the damming of the water." RT2 at 2-49.

On November 5, 2014, Defendant was sentenced to five years of probation, which may terminate in three years if he complies with all terms of probation, including the payment of restitution. Doc. #27. Defendant was also ordered to complete 200 hours of unpaid community service, pay $7,500 in restitution, and pay a $30 special assessment. Id.

Pursuant to 18 U.S.C. § 3402, Federal Rule of Criminal Procedure 58(g)(2)(B), and Local Rule 422, Defendant now appeals his convictions on Counts Three, Four, and Five.

## II.   OPINION

### A.   Legal Standard

On appeal, questions of statutory construction and statutory interpretation are reviewed *de novo*. United States v. Montes-Ruiz, 745 F.3d 1286, 1289 (9th Cir. 2014). As Defendant timely moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, the Court's review of the denial of the motion is *de novo*. United States v. French, 748 F.3d 922, 935 (9th Cir.) cert. denied, 135 S. Ct. 384 (2014). As with any sufficiency of evidence challenge, the Court must consider the evidence presented at trial in the light most favorable to the Government. Id. Thus, the ultimate inquiry for the Court is "whether this evidence, so viewed, is adequate to allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." United States v. Nevils, 598 F.3d 1158, 1164

(9th Cir. 2010).

    B.   Statutory and Regulatory Framework

The United States Mining Laws Act of 1872 reserved to "locators of all mining locations" the "exclusive right of possession and enjoyment of all the surface included within the lines of their locations." 30 U.S.C. § 26. This "exclusive right" was modified and limited by the Surface Resources and Multiple Use Act of 1955, which reserved to the United States the right "to manage and dispose of the vegetative surface resources thereof and to manage other surface resources thereof." 30 U.S.C. § 612(b). However, regulations passed pursuant to the Surface Resources and Multiple Use Act of 1955 may not "endanger or materially interfere with prospecting, mining or processing operations or uses reasonably incident thereto." Id.

In accordance with 30 U.S.C. § 612(b) – and pursuant to the statutory authority granted in 16 U.S.C. § 551 – the Secretary of Agriculture promulgated a series of regulations that prohibit certain activities within the National Forest System. 36 C.F.R. § 261 et seq. These regulations are qualified by the limitation that "nothing in this part shall preclude activities as authorized by the U.S. Mining Laws Act of 1872 as amended." 36 C.F.R. § 261.1(b). Consistent with this language, the Ninth Circuit has upheld the Secretary of Agriculture's authority to regulate mining operations in the Natural Forest System, provided that such operations are not "prohibited nor so unreasonably circumscribed as to amount to a prohibition." United States v. Weiss, 642 F.2d 296, 299 (9th Cir. 1981). As relevant in this case, the Ninth Circuit has held that the Forest Service may

5

require prospective miners to submit either a notice of intent or a plan of operations for approval under 36 C.F.R. § 228.4, provided that these requirements apply only to operations "which might cause significant disturbance of surface resources." 36 C.F.R. § 228.4(a); United States v. Doremus, 888 F.2d 630, 632 (9th Cir. 1989).

As set forth in 36 C.F.R. § 228.4, "a notice of intent to operate is required from any person proposing to conduct operations which might cause significant disturbance of surface resources." 36 C.F.R. § 228.4(a). "Operations" is defined as including "[a]ll functions, work, and activities in connection with prospecting, exploration, development, mining or processing of mineral resources and all uses reasonably incident thereto[.]" 36 C.F.R. § 228.3(a). The regulations provide that "[s]uch notice of intent shall be submitted to the District Ranger having jurisdiction over the area in which the operations will be conducted." 36 C.F.R. § 228.4(a). The regulations further provide that a notice of intent to operate is not required for certain activities, although these exceptions incorporate the central standard of "significant surface resource disturbance." 36 C.F.R. § 228.4(a)(1). For example, a notice of intent to operate is not required for "[p]rospecting and sampling which will not cause significant surface resource disturbance and will not involve removal of more than a reasonable amount of mineral deposit for analysis and study which generally might include searching for and occasionally removing small mineral samples or specimens, gold panning, metal detecting, non-motorized hand sluicing, using battery operated dry washers, and collecting of

1  mineral specimens using hand tools[.]"  36 C.F.R.
2  § 228.4(a)(1)(ii).  Similarly, a notice of intent to operate is
3  not required for "[o]perations which will not involve the use of
4  mechanized earthmoving equipment, such as bulldozers or backhoes,
5  or the cutting of trees, unless those operations otherwise might
6  cause a significant disturbance of surface resources[.]"  36
7  C.F.R. 228.4(a)(1)(vi).  Thus, even for these enumerated
8  "exceptions," the central inquiry remains whether operations
9  might cause significant disturbance of surface resources.
10      As noted above, Part 261 sets forth a number of activities
11  which are prohibited within the National Forest System,
12  violations of which form the bases of the criminal charges
13  against Defendant.  36 C.F.R. § 261.1 specifically provides that
14  "Forest Officers may permit in the . . . approved [operating]
15  plan an act or omission that would otherwise be a violation" of
16  Part 261.  36 C.F.R. § 261.1a.  Defendant did not however file a
17  notice of intent or a proposed plan of operations, and did not
18  obtain an approved operating plan.  For these reason he was
19  prosecuted for violations of individual sections of Part 261, 36
20  C.F.R § 261.1a notwithstanding.
21      C.   Discussion
22           1.   Significant Disturbance of Surface Resources
23       Much of Defendant's appeal rests on his position that his
24  operations did not cause significant disturbance of surface
25  resources.  This issue requires the Court to determine whether
26  sufficient evidence was presented at trial for a rational trier
27  of fact to conclude, beyond a reasonable doubt, that Defendant's
28  operations caused significant surface disturbance.  For the

7

following reasons, the evidence was sufficient to so conclude.

At trial, Nichloas Shope, a law enforcement officer with the U.S. Forest Service, testified that, while approaching the Lucky Bob mining claim, he personally watched as Defendant "used his drill [and] was drilling on rocks[.]" RT1 at 1-121. Richard Weaver, a minerals and geology program manager for the U.S. Forest Service, testified that he observed the following conditions at the Lucky Bob mining claim: (1) "some clearing of riparian vegetation"; (2) "piles of riparian vegetation, brush and other vegetation that had been cut"; (3) "a pile where logs and cleared brush . . . and riparian vegetation had been burned"; and (4) "a new trail" constructed by Defendant. RT1 at 1-50 – 1-54. Evidence was also introduced that Defendant cut 11 alder trees, as well as one cedar tree that was already dead. RT1 at 1-196. Moreover, the Government introduced at trial a letter submitted by Defendant to the Bureau of Land Management, in which Defendant acknowledged (1) "clearing brush . . . to reopen the trail"; (2) stacking and burning "three large piles of brush" which "took a total of eight days"; (3) working for eight hours at stacking rocks; (4) "repairing an existing trail"; and (5) spending "two days removing brush and five days burning[.]" Gov't Exhibit 100 at 3; RT1 at 1-211. This evidence was plainly sufficient for a rational fact-finder to conclude, beyond a reasonable doubt, that Defendant's operations caused significant disturbance to surface resources. Even under a *de novo* standard of review, which the Ninth Circuit has suggested may be appropriate in determining whether a plan of operations is required, the Court would – and does – reach the same conclusion:

8

1  Defendant's unauthorized operations caused significant
2  disturbance to surface resources.  See United States v.
3  Brunskill, 792 F.2d 938, 940 (9th Cir. 1986) (noting that
4  "[w]hether a plan of operations is required is a question of law
5  reviewed *de novo*").
6     To the extent Defendant argues that his use of a non-
7  motorized hand sluice and other hand tools necessarily requires a
8  finding that he did not cause a significant disturbance of
9  surface resources, this argument is unpersuasive.  In arguing
10 that "[b]oth hand tools and a non-motorized hand sluice are
11 explicitly listed as examples of activities which will not cause
12 significant surface resource disturbance," Defendant misreads 36
13 C.F.R. § 228.4(a)(1)(ii).  Reply at 7.  In its entirety, 36
14 C.F.R. § 228.4(a)(1)(ii) provides that a notice of intent to
15 operate is not required for "[p]rospecting and sampling which
16 will not cause significant surface resource disturbance and will
17 not involve removal of more than a reasonable amount of mineral
18 deposit for analysis and study which generally might include
19 searching for and occasionally removing small mineral samples or
20 specimens, gold panning, metal detecting, non-motorized hand
21 sluicing, using battery operated dry washers, and collecting of
22 mineral specimens using hand tools[.]"  36 C.F.R.
23 § 228.4(a)(1)(ii).  By its plain terms, this language only
24 exempts those conducting prospecting and sampling *which will not*
25 *cause significant surface resource disturbance*.  For the reasons
26 stated above, Defendant's operation did not meet this
27 requirement.  Moreover, although this section specifically refers
28 to non-motorized hand sluicing and collecting of mineral

specimens using hand tools, the regulation merely notes that exempted operations "might include" these activities. This is far from the blanket exclusion urged by Defendant. Reply at 7.

Finally, this argument overlooks the cumulative effect of Defendant's operations: while non-motorized hand sluicing, alone, may not constitute significant surface resource disturbance, the combination of each of Defendant's actions did, in fact, cause significant surface resource disturbance. For this same reason, Defendant's arguments regarding the breaking of rocks, and the cutting of timber for clearance purposes, fail. Reply at 7. The Court does not hold that these activities, in all forms, would necessarily constitute significant surface resource disturbance. Rather, the Court merely holds that, in this specific case, considering the totality of Defendant's activity on the Lucky Bob Mining Claim, Defendant's operation constituted such a disturbance.

2. Count 3

In Count 3, Defendant is alleged to have violated 36 C.F.R. § 261.9(a), which prohibits "[d]amaging any natural feature or other property of the United States[.]" Defendant argues that cutting down common trees or brush cannot sustain a conviction under 36 C.F.R. § 261.9(a), because another, more specific provision, in the same subsection, prohibits "[d]amaging any plant that is classified as a threatened, endangered, sensitive, rare, or unique species." Opening Brief at 12 (citing 36 C.F.R. § 261.9(c)). Thus, Defendant argues, "natural feature" in 36 C.F.R. § 261.9(a) cannot be read to include common, non-endangered, plants because such a reading would render 36 C.F.R.

10

§ 261.9(c) mere surplusage. Id. at 13.  Although not presented with this exact argument, the Ninth Circuit has indicated that "live green trees are a feature of nature." Doremus, 888 F.2d at 635.  Regardless, the Court need not reach this issue because Defendant clearly damaged a "natural feature or other property of the United States" by "drilling on rocks[.]"  RT1 at 1-121 (testimony of Nicholas Shope).  As Defendant "engage[d] in some conduct that is clearly proscribed" by 36 C.F.R. § 261.9(a), it is immaterial whether damaging common trees and brush is an *additional* violation of that regulation.  See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.  A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.").

Defendant argues that "[w]hen the magistrate judge explained his determination that Mr. Godfrey was guilty of Count Three, he concluded that there had been damage to trees and brush, but did not refer to the rocks."  Reply at 8-9.  This argument is belied by the record.  In addressing the evidence "as to each individual count," the Magistrate Judge concluded that significant resource disturbance had occurred, pointing, in part, to "the breaking up of boulders, and using chains and using a drill to do so[.]"  RT2 at 2-49.  This factual finding was supported by the testimony of Nicholas Shope (RT1 at 1-121).  Defendant's conviction on Count 3 is therefore affirmed.

//

11

        3.    <u>Count 4</u>

In Count 4, Defendant is alleged to have violated 36 C.F.R. § 261.10, which prohibits "constructing, placing, or maintaining any kind of road, trail, structure, fence, enclosure, communication equipment, significant surface disturbance, or other improvement on National Forest System lands or facilities without a special-use authorization, contract, or approved operating plan when such authorization is required." 36 C.F.R. § 261.10(a). As discussed above, Defendant's mining operation caused significant disturbance of surface resources. Moreover, much of Defendant's activity was in service of creating a "new trail" to access his mining claim. RT1 at 1-54. As Defendant's unauthorized trail work constituted a significant surface disturbance, and he failed to obtain an approved plan of operations, this work was in violation of 36 C.F.R. § 261.10(a). Accordingly, Defendant's conviction on Count 4 is affirmed.

        4.    <u>Count 5</u>

In Count 5, Defendant is alleged to have violated 36 C.F.R. § 261.11, which prohibits "[p]lacing in or near a stream, lake, or other water any substance which does or may pollute a stream, lake, or other water[.]" 36 C.F.R. § 261.11(c). Defendant argues that his conviction on this count must be reversed because "[p]utting materials from the creek back into the creek does not constitute the 'placing' of a 'pollutant' into the creek." Opening Brief at 17. Defendant cites language from a Supreme Court case concerning the Clean Water Act: "If one takes a ladle of soup from a pot, lifts it above the pot, and pours it back into the pot, one has not 'added' soup or anything else to the

pot." Opening Brief at 16-17 (citing S. Florida Water Mgmt. Dist. v. Miccosukee Tribe of Indians, 541 U.S. 95, 110 (2004)). Defendant contends that the evidence offered at trial shows that he "did not introduce pollutants such as chemicals, oils, outside dirt, other liquids, or trash into Poorman Creek." Opening Brief at 17. The Magistrate Judge appeared to acknowledge as much during the second day of trial: "We know he was breaking up rocks. We know he was pouring some chemicals, whether non-toxic or otherwise, but there wasn't any evidence that I'm aware of that any of those broken up rocks or chemicals ended up in the creek." RT2 at 2-44 – 2-45.

At trial, the Government presented the testimony of Jeff Huggins, a water control engineer for the Central Valley Regional Water Quality Control Board in Rancho Cordova. RT1 at 1-161. Huggins was accepted by the Court as an expert witness. RT1 at 1-163. Huggins testified that he personally observed mining wastes in Poorman Creek, downstream of Defendant's mining operation. RT1 at 1-171. When asked to define "mining wastes," Huggins noted that it is "a very wide definition" which includes "the process fluids, the process solids, the overburden . . . the sand, silts, and clays, gravels, coarser grain fraction, overburden waste rock, processing fluids, processing solution." RT1 at 1-174. However, Huggins did not define any of these terms, and only testified that he personally observed "sands, silts and clays and bottom deposits" in Poorman Creek "downstream of the operation." RT1 at 1-171. Huggins further testified that the location of Defendant's mining operation was "all within the high water mark within the flood plain of Poorman Creek, so the

mining activities are being conducted within the normal high water mark of Poorman Creek." RT1 at 1-170.  Huggins testified that both "sediment" and "mining waste" are "pollutant[s]."  RT1 at 1-173.  Of course, this final piece of testimony is a legal conclusion, and does not aid the Court's ultimate analysis.

In finding Defendant guilty of violating 36 C.F.R. § 261.11(c), the Magistrate Judge noted that Defendant's operation presented "something very different" than "removing a ladle of soup and putting it back in the soup pot."  RT2 at 2-50.  The Magistrate Judge reasoned that it differed from the "one ladle of soup" example:

> "not only because of the trench, but again, the government also did present expert testimony in terms of the impact by the defendant here.  This is not someone speculating well, you've moved some small amount through your mineral and we think this may be harming.  There is a reason why these basins to – water's such a precious resource here, and when it's flowing into other rivers and it's affecting usage for people, farms, agriculture, habitat and while I recognize water flows will vary during high water months and low water, and rain and snow melt, again we've been in a drought here, it is very easy looking at the photographs to realize the significant impact that the defendant had on Poorman's Creek through damming, blocking, altering that creek."

RT2 at 2-52 – 2-53.
Accepting the evidence at trial in the light most favorable to the Government, the Court finds that these factual findings are supported by sufficient evidence.  Specifically, Defendant's mining operations resulted in the addition of "sands, silts and clays and bottom deposits" into Poorman Creek downstream of the operation.  Additionally, the evidence supports the Magistrate Judge's factual finding that these additions could have a significant effect on larger ecosystems.  See RT1 at 1-177

14

1  (testimony of Jeff Huggins that the "beneficial uses" of Poorman
2  Creek include "domestic and municipal water supply, agricultural
3  water supply, power supply, recreation, esthetics [sic], fish and
4  – fish and wildlife habitat, spawning").

5  However, the legal issue of whether the release of materials
6  found within the high water mark of Poorman Creek constitutes
7  "placing a pollutant" into the creek remains.  As this is an
8  issue of statutory construction, the Court's review is *de novo*.
9  United States v. Montes-Ruiz, 745 F.3d 1286, 1289 (9th Cir.
10 2014).

11 As an initial matter, the structure of 36 C.F.R. § 261.11 is
12 informative.  The subsection is labeled "Sanitation" and 36
13 C.F.R. § 261.11(c) is surrounded by prohibitions on
14 (1) depositing in a toilet or plumbing fixture a substance which
15 could interfere with its operation; (2) leaving refuse, debris,
16 or litter in an unsanitary condition; 3) failing to properly
17 dispose of all garbage; and (4) improperly dumping refuse,
18 debris, trash, or litter.  36 C.F.R. § 261.11(a)-(e).  Thus, the
19 provisions surrounding 36 C.F.R. § 261.11(c) lend support to
20 Defendant's argument that "any substance which does or may
21 pollute" must be a foreign substance, not a substance which is
22 already found within the high water mark of the river.

23 Although "pollute" is not defined within Part 261, the
24 dictionary definition of "pollute" is instructive.  See Phillips
25 v. AWH Corp., 415 F.3d 1303, 1319 (Fed. Cir. 2005) (noting that
26 "dictionaries, encyclopedias and treatises are particularly
27 useful resources to assist the court in determining the ordinary
28 and customary meanings of [relevant] terms").  The Merriam-

Webster Dictionary offers two definitions of "pollute:" (1) "to make physically impure or unclean;" and (2) "to contaminate (an environment) especially with man-made waste." As with the structure of the regulation, these definitions suggest that "placing any substance which does or may pollute" necessarily entails the introduction of a foreign substance, possibly even a man-made substance.

Returning to the Supreme Court's "one ladle of soup" example, the Court agrees that the present case is not closely analogous. S. Florida Water Mgmt. Dist. v. Miccosukee Tribe of Indians, 541 U.S. 95, 110 (2004)). Defendant did not merely remove water from one location in Poorman Creek and return that same water to another location in Poorman Creek. Rather, he diverted the water through his mining operation, and returned it, along with "sands, silts and clays and bottom deposits" to Poorman Creek, downstream of his operation. However, as noted by the Magistrate Judge and as emphasized now by Defendant, the entire mining operation occurred beneath the high water mark of Poorman Creek. Importantly, there is no evidence that any foreign substance (such as a chemical) was introduced to Poorman Creek. See RT2 at 2-44 – 2-45 (the Magistrate Judge, noting that "there wasn't any evidence that I'm aware of that any of those broken up rocks or chemicals ended up in the creek"); see also RT1 at 182 (testimony of Huggins, noting that "chemicals getting into the water" was "not the major concern in this case"). In this sense, a more apt analogy may be that of a bowl of cereal. At its low point, Poorman Creek is much like a bowl of Cheerios with very little milk in it, with a number of Cherrios pieces

"stranded" up on the sides of the bowl.  Filling the bowl with milk releases those "stranded" Cherrios pieces back into the milk, but nothing foreign has been added to the bowl.  Similarly, Defendant's operation merely released sediment that was already part of the creek-bed back into the creek.  As testified to by Jeff Huggins, this activity may have a caused a significant effect on Poorman Creek and those ecosystems which rely on it.  RT1 at 1-177.  Indeed, as discussed above, Defendant has been properly convicted of causing an unauthorized significant disturbance to surface resources.  However, the Government's evidence was insufficient to sustain Defendant's conviction under 36 C.F.R. § 261.11 for *polluting* the creek.  Accordingly, Defendant's conviction on Count 5 is reversed.

####    5.   Notice

The New 49'ers Legal Fund ("Amicus"), as amicus curiae, argues that the Forest Service's failure to give Defendant formal notice of his violations runs afoul of both the regulatory framework of 36 C.F.R. § 228 et seq., as well as broader constitutional principles of due process.  Amicus Brief at 7, 13.  With regard to the regulatory framework, Amicus argues that Part 228 places the burden on the Forest Service to conduct inspections of all mining operations within the National Forest System, and to give formal notice to individuals that their operations are in violation of the regulations.  Amicus Brief at 7.  Because Defendant never received a formal "notice of noncompliance" under 36 C.F.R. § 228.7, Amicus argues that cannot be prosecuted under Part 261.  Amicus Brief at 7.  Practically, as the Magistrate Judge observed, this approach would make little

17

sense: miners would essentially be immune from prosecution under Part 261 for any mining-related activity, regardless of its severity, as long as the operations were conducted before a Forest Service officer learned of the violation and gave formal notice.  RT1 at 1-191 ("The Court: . . . If he went out and clear-cut 20 acres, pushing a backhoe and bulldozer, would your position be that you can't cite him for that, you haven't given him a notice of non-compliance? [Defense Counsel]: Yes").  Such a policy would provide little incentive for prospective miners to submit either a notice of intent to operate or plan for approval of mining operations, as required by 36 C.F.R. § 228.4(a), and would provide a perverse incentive of immunity from prosecution to miners who could avoid detection by the Forest Service.

More importantly, this argument fails because of the structure of 36 C.F.R. § 228 et seq.  Prior to any mention of notices of noncompliance, 36 C.F.R. § 228.4(a) provides that "a notice of intent to operate is required from any person proposing to conduct operations which might cause significant disturbance of surface resources" and that "[s]uch notice of intent shall be submitted to the District Ranger having jurisdiction over the area in which the operations will be conducted."  In a subsequent subsection, titled "Inspection, noncompliance[,]" the regulations provide that "Forest Officers shall periodically inspect operations to determine if the operator is complying with the regulations in this part *and an approved plan of operations*."  36 C.F.R. § 228.7(a) (emphasis added).  The regulations go on to provide that, "[i]f an operator fails to comply with the

regulations or *his approved plan of operations* . . . the authorized officer shall serve a notice of noncompliance upon the operator[.]" 36 C.F.R. § 228.7(b). Given the structure of Part 228, and the specific references to "an approved plan of operations," this subsection must be read as requiring periodic inspections and notice of noncompliance *subsequent* to the submission of a notice of intent to operate, and the receipt of an approved plan of operations by the miner. As Defendant did not submit the requisite notice of intent to operate, nor did he obtain an approved plan of operations, 36 C.F.R. § 228.7 is not applicable and the Forest Service was not obligated to provide him with a notice of noncompliance prior to citing him for violations of Part 261.

With regard to Amicus' constitutional due process challenge, the Court need not determine whether citing a miner under Part 261 – without giving prior actual notice that he was in danger of violating the regulations – runs afoul of due process. Reply at 13. At trial, David Brown, a minerals administrator with the Forest Service, testified that, on April 2, 2013, he received a phone call from Defendant, during which he informed Defendant that "he would need a plan of operations" because his mining "activities might be causing significant surface disturbance and that would require a plan of operations." RT1 at 1-31. Brown also testified that Defendant had informed him that he would stop work at his mining site until he had contacted the appropriate Forest Service personnel. RT1 at 1-32. While testifying, Defendant himself acknowledged that this phone call occurred, although he did not remember the substance of the conversation.

RT1 at 1-249.  Thus, even without a formal notice of noncompliance, Defendant was on actual notice that a notice of intent to operate was required, and that continued operations were improper.  Amicus proposes an "as applied" constitutional challenge, and the Court need not consider the constitutional implications of a counterfactual case in which no notice was provided.  <u>Acosta v. City of Costa Mesa</u>, 718 F.3d 800, 821-22 (9th Cir. 2013).

### III.   ORDER

For the reasons set forth above, the Court AFFIRMS Defendant's convictions on Count 3 and Count 4 and REVERSES Defendant's conviction on Count 5. This matter is remanded to Magistrate Judge Newman for further proceedings, including reconsideration of the restitution Order entered by him on November 5, 2014.

IT IS SO ORDERED.

Dated: June 4, 2015

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE